## LEWIS v. STATE.
### No. A–11924.

Criminal Court of Appeals of Oklahoma.
March 16, 1954.

Ed Shipp, Idabel, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., Bascom Coker, County Atty., McCurtain County, Idabel, for defendant in error.

POWELL, Presiding Judge.

Mabel Lewis was charged in the district court of McCurtain County with the crime of assault with a dangerous and deadly weapon with intent to kill, but the jury found her guilty of the included offense of assault and battery with intent to do bodily harm. The jury being unable to agree upon the punishment, the court fixed the same at four years confinement in the state penitentiary.

Counsel for the defendant states in his brief, "The only proposition urged by the defendant is that the punishment assessed by the judgment and sentence of the court is excessive, harsh and the result of passion and prejudice on the part of the trial court."

The State counters that "the basis for modification of a judgment and sentence by this court must be presented as a matter of law, and not as a matter of clemency.

The power of this court to modify a judgment and sentence is based upon an award of justice, as distinguished from the executive power of the Governor to pardon as an award of grace." The case of Hancock v. State, 90 Okl.Cr. 69, 210 P.2d 372, is cited. We find this a correct statement of the law.

The parties involved were colored people. The prosecutrix was shown to be a young colored girl, the mother of a small girl and a baby, but presently without a husband. Whether she had been divorced is not disclosed. At any rate, there was introduced into evidence one of a number of letters the prosecutrix was alleged by the defendant to have sent to her husband through the mail. The defendant was supposed to have been in California when the first letter was sent. She apprehended the letter introduced in evidence. It was a passionate love letter, and suggested to Charles Lewis, husband of the accused, the youth of the sender, and in effect her potent sexual ability. The prosecutrix denied sending the letter. Defendant's husband testified to prosecutrix practicing the wiles of a siren on him, and to his wife intercepting the letter introduced into evidence. Whether the prosecutrix sent the letters or did not send them, the defendant met the prosecutrix, Maxine Renny, who was carrying her baby in her arms, accompanied by her grandmother, Flauria Graves, who was leading another small child and carrying a package in one hand, on the streets of the city of Idabel. Nothing was said at the first point of meeting, but later near the railway station, prosecutrix swore that the defendant "headed me off" and asked her about writing letters to her husband, and she denied that she had written defendant's husband, and then she stated that defendant produced a pocket knife, cut her on the head, and that she ran and that Mabel Lewis ran after her and cut her in the back; that prosecutrix had an umbrella and attempted to strike the knife, and that Mabel Lewis cut her baby on the leg and then cut her grandmother when she attempted to intervene.

The defendant claimed that the grandmother had the umbrella and attacked her first with it, and then tried to cut her with a knife, and then she got out her knife and started to cutting. She claimed that she did not stab to kill, which she claimed she could have done, but cut to defend herself.

Other witnesses testified but did not add much to the case one way or the other.

Counsel for the defense points out that the state failed to produce the testimony of the physician who attended Maxine Renny and the others, to show the nature of the wounds inflicted. The knife used, though in possession of the sheriff, was not introduced into evidence. Whether the blade was one inch long or six inches was not shown.

The jury, while finding the accused guilty of the included offense, as stated, could not agree on the amount of the punishment. From the questions they propounded the court it appears that they were trying to find out the difference between a year in the penitentiary, and a year and a day, as actually served. The maximum penalty for the crime for which the accused was found guilty is not exceeding five years in the state penitentiary. Tit. 21 O.S.1951 § 645. The minimum could have been one year in the county jail.

From the circumstances disclosed by the record, it is our thought that the ends of justice will be met by modifying the sentence imposed from four years in the state penitentiary to two years in the state penitentiary. Tit. 22 O.S.1951 § 1066. Though there was conflict as to who started the fight, there is strong evidence that defendant sought out the prosecutrix to warn her about the love letters her husband had received, and she was careless with her knife, cutting not only the prosecutrix but the baby and the grandmother.

It is therefore ordered that the judgment of the district court of McCurtain County be and the same is modified by reducing the sentence imposed from a term of four years in the state penitentiary, to a term of two years in the state penitentiary, and the judgment as thus modified is affirmed.

JONES and BRETT, JJ., concur.